UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | 18 C 5263 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| OFFICER TAYLOR, SERGEANT DUNN, and SERGEANT BEACHEM, | ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

James Johnson sues three Cook County Jail correctional officers under 42 U.S.C. § 1983 for allegedly failing to protect him from an attack by a fellow detainee and failing to provide him medical treatment after the attack. Doc. 94. Defendants move under Civil Rule 12(b)(6) to dismiss the operative complaint. Doc. 95. The motion is granted in part and denied in part.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Johnson's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Johnson as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the

1

facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

Johnson identifies as "a member of the transgender community." Doc. 94 at ¶ 4. On December 19, 2016, while a pretrial detainee at Cook County Jail, Johnson was attacked by another detainee. *Id*. at ¶¶ 3, 9. He sustained serious injuries, and the Jail placed him in protective custody. *Id*. at ¶¶ 10-11.

On the evening of January 2, 2017, Johnson used the Jail's dayroom area to make a phone call. *Id*. at ¶¶ 13-14. Before placing the call, Johnson told Officer Taylor not to allow a detainee named Francisco Garcia into the dayroom area because Johnson feared an attack from Garcia. *Id*. at ¶¶ 13, 15. Garcia and Johnson were not supposed to be in the same area anyway, as Johnson was in protective custody and Garcia was not. *Id*. at ¶¶ 11, 17-18. Officer Taylor nonetheless allowed Garcia to enter the dayroom area, where he attacked Johnson. *Id*. at ¶¶ 16, 19-20. Taylor, Sergeant Dunn, and Sergeant Beachem eventually intervened, but only after Garcia had seriously injured Johnson. *Id*. at ¶¶ 21, 23-24.

The three officers delayed intervening because they bore animus against Johnson due to his transgender status. *Id*. at ¶¶ 22, 45-46. In addition, although Johnson asked the officers for medical attention to treat the serious injuries he sustained, they refused to provide him with medical treatment, both immediately after the attack and later. *Id*. at ¶¶ 53-55.

## Discussion

The operative complaint—which is the third amended complaint, and the first prepared by able recruited counsel—brings a failure-to-protect claim, an equal protection claim, and an inadequate medical care claim. Doc. 94. Defendants move to dismiss all three claims. Doc. 95.

I.      **Failure-to-Protect Claim**

Failure to protect pretrial detainees from violence at the hands of other detainees violates the Fourteenth Amendment's Due Process Clause. *See Fisher v. Lovejoy*, 414 F.3d 659, 661 (7th Cir. 2005) ("The Due Process Clause … protects pre-trial detainees from punishment and places a duty upon jail officials to protect pre-trial detainees from violence."). To state an *Eighth Amendment* failure-to-protect claim against a prison official, a *convicted prisoner* must allege that: (1) the official intentionally caused him to be confined "'under conditions posing a substantial risk of serious harm'"; and (2) the official "acted with 'deliberate indifference' to his health or safety." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). But for a *pretrial detainee* proceeding under the *Due Process Clause*, the deliberate indifference standard morphs into an objective one, requiring more than negligence or gross negligence, but less than subjective intent to harm. *See Hardeman v. Curran*, 933 F.3d 816, 821-23 (7th Cir. 2019); *Miranda v. Cnty. of Lake*, 900 F.3d 335, 350-54 (7th Cir. 2018); *see also Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc) (explaining that for a failure-to-protect claim, the objective standard requires a detainee to show that "[t]he defendant did not take reasonable available measures to abate th[e] risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious") (cited with approval by *Miranda*, 900 F.3d at 351-54).

Defendants argue that Johnson fails to state a failure-to-protect claim because the complaint does not allege that they knew Garcia posed a substantial risk to Johnson. Doc. 95 at 5-7. The argument easily fails as to Officer Taylor. The complaint alleges that before Johnson placed his phone call, he told Taylor "not [to] let inmate Garcia out into the dayroom with [Johnson] because [Johnson] was afraid of harm from inmate Garcia." Doc. 94 at ¶ 15. The

3

complaint further alleges that Taylor "disregarded" that instruction and "let inmate Garcia into the dayroom." *Id*. at ¶ 16. Adding Taylor's alleged knowledge that Johnson was in protective custody, *id*. at ¶ 17, there is enough to state a claim that Taylor violated Johnson's due process rights by failing to protect him from an attack by Garcia. *See LaBrec v. Walker*, 948 F.3d 836, 842-46 (7th Cir. 2020) (explaining that "an articulation of a specific threat" by a prisoner suffices to put a correctional officer on notice, even under the Eighth Amendment standard); *Gevas v. McLaughlin*, 798 F.3d 475, 480-82 (7th Cir. 2015) ("In failure to protect cases, [a] prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety.") (alteration in original) (internal quotation marks omitted); *Brown v. Budz*, 398 F.3d 904, 915 (7th Cir. 2005) ("[W]e have often found deliberate indifference where custodians know of threats to a *specific detainee* posed by a *specific source* … .").

The question is closer as to Sergeant Dunn and Sergeant Beachem because the complaint does not allege that Johnson told either officer anything specific about Garcia before the attack. Doc. 94 at ¶¶ 13-19. But the complaint does allege that after the attack began, Dunn and Beachem "intentionally failed to intervene because they knew that [Johnson] was transgender and did not like his identification as such." *Id*. at ¶¶ 21-22. Putting aside their motivation for the moment, the allegation is that Dunn and Beachem intentionally failed to act to protect Johnson from a danger they knew was ongoing. That suffices to state a failure-to-protect claim. *See Velez v. Johnson*, 395 F.3d 732, 734-36 (7th Cir. 2005) (holding that a pretrial detainee stated a claim against a jail official who took too long to respond to an emergency); *see also Cesal v. Moats*, 851 F.3d 714, 722 (7th Cir. 2017) ("Intentional delays in medical care may constitute deliberate indifference, even if the inmate's medical condition is non-life threatening.").

4

## II. Equal Protection Claim

Johnson's equal protection claim alleges that Defendants allowed Garcia to attack Johnson and delayed intervening to stop the attack because Johnson identifies as transgender. Doc. 94 at ¶¶ 21-22, 45-46. The Seventh Circuit has not yet decided whether transgender people are a protected class for Fourteenth Amendment purposes. *See Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1051 (7th Cir. 2017) ("[T]his case does not require us to reach the question of whether transgender status is per se entitled to heightened scrutiny."); *see also Tay v. Dennison*, 2020 WL 2104962, at *17 (S.D. Ill. May 1, 2020) ("Neither the Seventh Circuit nor the Supreme Court has determined whether transgender individuals constitute a protected class."). But even without heightened scrutiny, a jail official violates a detainee's equal protection rights by "intentionally treat[ing] [him] differently from others similarly situated" if "there is no rational basis for the difference in treatment." *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012) (quoting *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008)). That is precisely what Johnson alleges here, as a detainee's identification as transgender is not a rational reason for failing to protect him from another detainee. Doc. 94 at ¶ 47 (alleging that in failing to protect Johnson, Defendants treated him differently from detainees who do not identify as transgender).

Defendants contend that Johnson's equal protection claim is barred by the statute of limitations. According to Defendants, the claim first appeared in the third amended complaint, which was filed on June 2, 2020, well over two years after the attack. *See Regains v. City of Chicago*, 918 F.3d 529, 533 (7th Cir. 2019) ("[W]e look to the law of the state in which the personal injury occurred to determine the length of the [§ 1983] statute of limitations. Under Illinois law, a plaintiff must bring a personal injury action within two years after its accrual.")

5

(citation omitted). That argument fails, as the claim relates back to Johnson's original complaint, which was filed within two years of the attack.

Civil Rule 15(c) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when … the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "The criterion of relation back is whether the original complaint gave the defendant enough notice of the nature and scope of the plaintiff's claim that he shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one." *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 573 (7th Cir. 2006). Defendants concede that the equal protection claim "is premised on [Johnson's] identification as transgender on January 2, 2017[,] and the resulting injury on the same day at the hands of inmate … Garcia." Doc. 95 at 14. In other words, the claim arises out of Garcia's attack—the same incident giving rise to the failure-to-protect claim, which was brought in Johnson's original (*pro se*) complaint. Doc. 1 at 4-5. The equal protection claim thus relates back to the original complaint, and because Johnson filed that complaint in August 2018—well within two years of the attack—the claim is timely. *See Neita v. City of Chicago*, 830 F.3d 494, 498 (7th Cir. 2016) ("The original complaint, which described [the plaintiff's] arrest and the subsequent searches of his person and business, was sufficient to put the defendant officers on notice that they would have to defend against all claims arising out of this encounter … .").

## III. Inadequate Medical Care Claim

Johnson's inadequate medical care claim is really two subclaims. The first claim is that after Johnson was attacked, Defendants denied him medical care even though he "repeatedly requested medical attention from [them], both through written letters and grievance reports as well as through face-to-face communication." Doc. 94 at ¶¶ 52-55. The second claim sounds in

the register of a *Monell* claim, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), alleging that Defendants have a "custom, policy, or practice" to show "deliberate indifference to the medical needs of pre-trial detainees at … Cook County [Jail]" and to "provide inadequate medical care and treatment to pre-trial detainees" there. Doc. 94 at ¶¶ 56-57.

As to the second claim, "*Monell* claims focus on institutional behavior; for this reason, misbehavior by one or a group of officials is only relevant where it can be tied to the policy, customs, or practices of the institution as a whole." *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015). But the complaint alleges only that Taylor, Dunn, and Beachem—three specific officers—have a "custom, policy, or practice" to deny adequate medical care to pretrial detainees, Doc. 94 at ¶¶ 56-57, and says nothing about broader policies or practices at Cook County Jail. Moreover, the complaint says nothing about how any other pretrial detainee was affected by the alleged policies or practices. *See Daniel v. Cook Cnty.*, 833 F.3d 728, 734 (7th Cir. 2016) ("To prove an official policy, custom, or practice within the meaning of *Monell*, [a plaintiff] must show more than the deficiencies specific to his own experience … ."). The *Monell* claim is therefore dismissed.

As to the inadequate medical care claim against Defendants in their individual capacities, Defendants argue that the complaint's allegations "are extremely vague and fail to allege any specific conduct on behalf of each Defendant." Doc. 95 at 12. That is incorrect. The complaint alleges that Johnson had "a serious medical need resulting from the January 2, 2017 incident," that he "repeatedly requested medical attention from Defendants," and that Defendants "[f]ail[ed] to provide" the requested attention. Doc. 94 at ¶¶ 53-55. That suffices to state an inadequate medical care claim under the Due Process Clause. *See Miranda*, 900 F.3d at 353-54 (holding that a pretrial detainee has an inadequate medical care claim if the defendants'

7

"deliberate failure to act was objectively unreasonable"). Defendants correctly observe that "the law encourages non-medical … and administrative personnel at jails and prisons to defer to the professional medical judgment of the physicians and nurses treating the prisoners in their care without fear of liability for doing so," Doc. 95 at 12 (quoting *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010)), but a corrections officer may not *ignore* a detainee's requests for care. *See Miranda*, 900 F.3d at 353-54 (holding that the defendants' "intentional and knowing inaction" could support liability); *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) ("A prison official acts with a sufficiently culpable state of mind when he knows of a substantial risk of harm to an inmate and … fails to act in disregard of that risk.").

## Conclusion

Defendants' motion to dismiss is granted in part and denied in part. Johnson's failure-to-protect and equal protection claims may proceed. Johnson's inadequate medical care claim is dismissed insofar as it purports to state a *Monell* claim against Defendants in their official capacities, but it may proceed against Defendants in their individual capacities.

Because the third amended complaint is Johnson's first counseled complaint, the partial dismissal is without prejudice. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) ("Ordinarily, … a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend … ."). Johnson has until October 19, 2020 to file a fourth amended complaint. If he does not do so, the dismissal of the inadequate medical care claim against Defendants in their official capacities will convert automatically to a dismissal with prejudice, and Defendants shall answer

the surviving portions of the third amended complaint by November 2, 2020.  If Johnson files a fourth amended complaint, Defendants shall file their responsive pleading by November 2, 2020.

October 5, 2020              _____
                         United States District Judge